1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ARTHUR RAY JONES,

              Petitioner,

    v.

D.K. SISTO, Warden

              Respondent.

_____/

1:08-cv-01714 DLB (HC)

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS, DIRECTING CLERK OF
COURT TO ENTER JUDGMENT IN FAVOR
OF RESPONDENT, AND DECLINING TO
ISSUE CERTIFICATE OF APPEALABILITY

[Doc. 1]

      Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.

## BACKGROUND

      On March 13, 2006, the Stanislaus County District Attorney filed a first amended information charging Petitioner, in count one, with possession of heroin (California Health & Saf. Code § 11350) and in count two with misdemeanor driving under the influence in violation of California Vehicle Code section 23152, subdivision (a).  It was further alleged that Petitioner had suffered three prior "strike" serious felony convictions pursuant to California Penal Code section 667, subdivision (d) and five prior prison terms pursuant to California Penal Code section 667.5, subdivision (b).  (CT 15-16.)

      Petitioner waived a jury trial and a bench trial was conducted on May 9, 2006, on both counts.  (CT 56.)  The following day, the trial court found Petitioner guilty of both counts and

1   found true the allegations pursuant to California Penal Code sections 667 and 667.5.  (CT 57.)

2        Petitioner filed a timely notice of appeal.  The California Court of Appeal, Fifth Appellate

3   District affirmed the judgment on July 30, 2007.  (Lodged Doc. No. 4.)  On October 17, 2007,

4   the California Supreme Court denied review without comment.  (Lodged Doc. No. 10.)

5        Petitioner filed a petition for writ of habeas corpus in the California Supreme Court in

6   Case No. S167199 on October 1, 2008.  (Lodged Doc. No. 11.)  The petition was denied on

7   March 25, 2009.  (Lodged Doc. No. 12.)

8        Petitioner filed the instant federal petition for writ of habeas corpus in this Court on

9   November 10, 2008.  (Court Doc. 1.)  On May 19, 2009, the Court directed Respondent to file a

10  response to the petition.  (Court Doc. 13.)  Respondent filed an answer to the petition on August

11  17, 2009.  (Court Doc. 21.)  Petitioner did not file a traverse.

12                          STATEMENT OF FACTS

13       On October 24, 2005, California Highway Patrolman Vincent Villegas pulled Petitioner's

14  vehicle over because he was not wearing a seat belt.  (RT 59.)  Officer Villegas followed

15  Petitioner for two blocks prior to stopping him and noticed he was weaving.  (RT 61.)

16       As Officer Villegas approached the vehicle, he noticed a hypodermic syringe lying on

17  Petitioner's right leg.  Villegas asked for Petitioner's driver's license and registration and

18  Petitioner indicated he not have a license.  Petitioner's speech was slurred.  (RT 62.)  Believing

19  that Petitioner was intoxicated, Villegas asked him to step out of the vehicle and performed a

20  series of field sobriety tests.  Villegas concluded that Petitioner was under the influence of a

21  narcotic and Petitioner was placed under arrest.  (RT 68.)  Petitioner was transported to the CHP

22  office and was given his Miranda rights which he waived.  (RT 14-16.)  Officer Chris Reeves, a

23  certified drug evaluation expert, interviewed Petitioner who told him that over the course of the

24  day he had taken heroin, Vicodin, and Valium.  (RT 16.)  The heroin was ingested around noon

25  or 1:00 p.m.  (RT 17.)  Petitioner mumbled and slurred his words during the interview.  (RT 35.)

26       Petitioner admitted that he had been using heroin on and off for approximately 35 years.

27  determined that Petitioner was under the influence of a narcotic.  (RT 9, 11-14, 18-31, 69.)

28  Reeves noticed that Petitioner had fresh needle injection marks on his arms and legs.  (RT 19-

2

20.)  After performing various tests, Officer Reeves concluded Petitioner was under the influence

of narcotics.  A urine sample was taken from Petitioner, and he was then transported to the

Stanislaus County jail. (RT 69.)  As Petitioner was being booked into the jail, the officer

removed Petitioner's shoes and asked him to remove his socks.  (RT 70.)  Officer Villegas saw

Petitioner "flick" his sock off and a small object wrapped in plastic flew over Villegas' shoulder

and landed next to him.  The substance was a "small plastic wrapped bundle of a brown sticky

substance."  Officer Villegas asked Petitioner what it was and he said, "looks like heroin."  (RT

71.)

      Jesse Tovar of the Stanislaus Drug Enforcement Agency testified as an expert witness on

the issue of what constitutes a usable amount of a illegal narcotic.  (RT 42-43.)  Tovar stated that

as little as .01 grams of heroin could constitute a usable amount, and .11 grams of actual heroin

would obviously be a usable amount.  (RT 44-45.)

      Nancy Seger a criminalist for the Department of Justice performs drug testing and had

conducted thousands of tests in over 1,000 drug cases.  (RT 55.)   She testified that she was given

a substance from Officer Villegas regarding Petitioner for an offense that occurred on October

24, 2005.  She was provided with Petitioner's driver license number of CAP06556358.  (RT 48-

49.)  The substance was determined to be .11 grams of heroin.  (RT 49-50.)

      Petitioner did not present any evidence in support of his defense and only challenged the

sufficiency of the prosecution's evidence.

DISCUSSION

A.    <u>Jurisdiction</u>

      Relief by way of a petition for writ of habeas corpus extends to a person in custody

pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>,

529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered

violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises

out of the Stanislaus County Superior Court, which is located within the jurisdiction of this

Court.  28 U.S.C. §§ 2254(a); 2241(d).

1    On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

2    of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

3    enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; <u>Jeffries v. Wood</u>, 114

4    F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting

5    <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct.

6    1114 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059

7    (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

8    petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

9    B.    <u>Standard of Review</u>

10    Where a petitioner files his federal habeas petition after the effective date of the Anti-

11    Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that

12    the state court's adjudication of his claim:

13    (1) resulted in a decision that was contrary to, or involved an unreasonable
      application of, clearly established Federal law, as determined by the Supreme
14    Court of the United States; or

15    (2) resulted in a decision that was based on an unreasonable determination of the
      facts in light of the evidence presented in the State court proceeding.
16

17    28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if it "applies a rule that

18    contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are

19    materially indistinguishable from" a Supreme Court case, yet reaches a different result." <u>Brown</u>

20    <u>v. Payton</u>, 544 U.S. 133,  141 (2005) citing <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 405-06

21    (2000).  A state court decision will involve an "unreasonable application of" federal law only if it

22    is "objectively unreasonable." <u>Id</u>., quoting <u>Williams</u>, 529 U.S. at 409-10; <u>Woodford v. Visciotti</u>,

23    537 U.S. 19, 24-25 (2002) (*per curiam*).  "A federal habeas court may not issue the writ simply

24    because that court concludes in its independent judgment that the relevant state-court decision

25    applied clearly established federal law erroneously or incorrectly." <u>Lockyer</u>, at 1175 (citations

26    omitted).  "Rather, that application must be objectively unreasonable."  <u>Id.</u> (citations omitted).

27    "Factual determinations by state courts are presumed correct absent clear and convincing

28    evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court

1   and based on a factual determination will not be overturned on factual grounds unless objectively

2   unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."

3   Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Both subsections (d)(2) and (e)(1) of § 2254

4   apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v.

5   Blodgett, 393 F.3d 943, 976-77 (2004).

6        Courts further review the last reasoned state court opinion.  See Ylst v. Nunnemaker, 501

7   U.S. 979, 803 (1991).  However, where the state court decided an issue on the merits but

8   provided no reasoned decision, courts conduct "an independent review of the record . . . to

9   determine whether the state court [was objectively unreasonable] in its application of controlling

10   federal law."  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  "[A]lthough we

11   independently review the record, we still defer to the state court's ultimate decisions."  _Pirtle v._

12   _Morgan_, 313 F.3d 1160, 1167 (9th Cir. 2002).

13   C.   Insufficient Evidence to Support Heroin Possession Conviction

14        Petitioner contends that there was insufficient evidence to establish that heroin tested by

15   the California Department of Justice crime lab was the same substance found on the floor of the

16   booking room after it was flicked from Petitioner's sock.  Petition, at 6.

17        The law on insufficiency of the evidence claim is clearly established.  The United States

18   Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a

19   federal court must determine whether, viewing the evidence and the inferences to be drawn from

20   it in the light most favorable to the prosecution, any rational trier of fact could find the essential

21   elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).

22   Sufficiency claims are judged by the elements defined by state law.  Id. at 324, n. 16.

23        Because the California Supreme Court denied the claim without comment, this Court

24   must look through to the last reasoned state court decision rejecting the claim.  Ylst v.

25   Nunnemaker, 501 U.S. 797, 803 (1991).  Here, the last reasoned decision was issued by the

26   California Court of Appeal, Fifth Appellate District.

27        In rejecting Petitioner's claim, the Court of Appeal held as follows:

28             [D]efendant argues there was insufficient evidence to allow the trial court

to conclude the substance tested by the criminalist was the same as was seized from defendant by Officer Villegas.  We disagree

"To determine the sufficient of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt."  (*People v. Bolden* (2002) 29 Cal.4th 515, 553.)  While defendant couches his argument in terms of federal due process, the standard of review is to the same effect.  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)  Under principles of federal due process, the reviewing court asks, after viewing the evidence in the light most favorable to the prosecution, whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  (*Jackson v. Virginia* (1979) 443 U.S. 307, 319, italics omitted.)

According to defendant, the chain of custody evidence was insufficient to support the conviction because Officer Villegas never explained what he did with the "item" he seized from the floor during the booking search.  We conclude that although the officer did not explicitly state the process he followed concerning this item, other testimony adequately supplied what was lacking.

First, we note that the so-called item is what Officer Villegas described as "a small plastic wrapped bundle of a brown sticky substance."  The bundle was discovered during the pre-booking search when defendant flung it out of his sock.  Defendant was asked "what's this?" and he responded, "looks like heroin."

Second, Department of Justice criminalist Seger testified that she had an opportunity to test a substance that was "given to [her] from the California Highway Patrol from an Officer Villegas regarding a subject named Arthur R. Jones," specifically regarding "an offense date of October 24th, 2005."  She also indicated a specific California driver's license number was provided.  The trial judge concluded that "[b]ased upon the way the questions [were] asked the criminalist, I find that the drugs that were seized were taken by Officer Villegas and given to the DOJ for analysis."

In light of the above testimony, including the criminalist's very specific affirmations at trial that when Officer Villegas gave her the substance, certain identifying indicia were provided such as the subject's name, date of the offense, and driver's license, we conclude there was sufficient evidence for the trial court to conclude beyond a reasonable doubt that the item seized from defendant was the same heroin that criminalist Seger tested.  This ground for appeal fails.

(Lodged Doc. No 4, Opinion, at 8-9.)

Petitioner's claim is contrary to the record in this case.  Although Officer Villegas did not provide detailed testimony outlining the exact process utilized in this instance, there was other sufficient evidence to establish the chain of custody of the seized heroin.  Officer Villegas testified that as Petitioner was being booked into jail and removing his socks, he flicked his right sock and a small item wrapped in plastic flew over his left shoulder and landed on the ground

next to him. (RT 71.)  The item was described by Villegas as "a small plastic wrapped bundle of a brown sticky substance."  (Id.)  When Petitioner was asked what it was, he stated "[l]ooks like heroin."  (Id.)  Criminalist Seger testified that, on the same day of the commitment offense, Officer Villegas gave her a "substance" regarding a subject named Arthur R. Jones for an offense dated October 24, 2005-the date of the commitment offense. (RT 49.)  Seger also confirmed that the substance was identified by Petitioner's California license number CAP0656358.  (Id.)  Based upon Seger's analysis, she concluded that the seized item was heroin constituting a usable amount-0.11 grams.  (RT 49-50.)  Petitioner was able to and took advantage of cross-examining both Officer Villegas and Criminalist Seger regarding the chain of custody, and the issue was properly resolved by the trial court and affirmed by the appellate court.  Accordingly, there was sufficient evidence to convince a rational trier of fact beyond a reasonable doubt that Petitioner violated California Health and Safety Code section 11350 by possessing a usable amount of heroin, and his claim must be denied.

D.   Twenty-Five Years to Life Sentence - Cruel and Unusual Punishment

Petitioner contends that his 25 years to life sentence is cruel and unusual punishment, given his age and the fact the serious felonies were committed in 1968 "when he was a very young man."  Petition, at 8.

In the last reasoned decision of the California Court of Appeal, the Court found initially the claim was procedurally defaulted because it was not raised in the trial court, and, in the alternative, it was without merit under both the state and federal constitutional standard.

With regard to the applicable federal standard, the state appellate court held the following:

Similarly, the prohibition under the federal constitutional against cruel and unusual punishment is applicable to noncapital cases only in exceedingly rare or extreme cases involving sentences that are grossly disproportionate to the offense - - which is described as a "narrow proportionality principle." (*Ewing v. California* (2003) 538 U.S. 11, 20, 30 [lead opn. of O'Connor, J.]; *Lockyer v. Andrade* (2003) 538 U.S. 63, 73.)

In *Ewing*, the Supreme Court upheld a Three Strikes sentence, even when applied concerning a nonviolent third strike.  The defendant had stolen three golf clubs worth $1, 2000 as his third strike offense, and was sentenced to 25 years to life. (*Ewing v. California, supra*, 538 U.S. at 20.)  The Supreme Court explained

that the sentence did not constitute cruel and unusual punishment: "When the California Legislature enacted the three strikes law, it made a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime.  Nothing in the Eighth Amendment prohibits California from making that choice." (*Id.* at 25.)  Further, the Supreme Court explained that the legislative goal of punishing recidivist offenders more harshly is justified: "In weighing the gravity of [the defendant's] offense, we must place on the scales not only his current felony, but also his long history of felony recidivism.  Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions.  In imposing a three strikes sentence, the State's interest is not merely punishing the offense of conviction, or the 'triggering' offense: '[I]t is in addition the interest in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.' [Citation.] To give full effect to the State's choice of this legitimate penological goal, our proportionality review of [the defendant's] sentence must take that goal into account." (*Id.* at p.29.)  The court concluded the defendant's sentence in that case, "is justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by his own long, serious criminal record." (*Id.* at 29-30.)

Based on the above summary of the applicable constitutional standards, we conclude that even had defendant preserved this issue on appeal, he could not prevail because of his extensive criminal record and recidivism.  Defendant's criminal conduct as an adult began in 1966 and continued unabated, except in periods of incarceration, to the time of his present conviction, and includes at least 28 separate incidents of criminal behavior.  He has spent most of his adult life in prison, and is clearly a habitual, recidivist offender who has not been deterred by his periods of incarceration and has refused to learn any lesson from prior punishment.  Since the time of his violent sexual attacks perpetrated in 1968, he has demonstrated again and again that he is unwilling to refrain from criminal conduct that is dangerous to society, including thefts, batteries, driving under the influence, multiple drug offenses and multiple violations of parole.  And although defendant downplays the seriousness of his current heroin possession conviction, we cannot ignore that such offenders often revert to serious crimes to support their addiction and pose a further danger to others by driving under the influence.  Defendant's sentence of 25 years to life, when considered in light of his criminal history and recidivism, was not so grossly disproportionate as to violate the prohibition against cruel and unusual punishment under either state or federal standards. n.8

n.8 In appellate review on grounds of cruel and/or unusual punishment, as long as a punishment is proportionate to the defendant's individual culpability, there is no requirement that it be proportionate to the punishments imposed in other similar cases. (*People v. Stanley* (2006) 39 Cal.4th 913, 966-967.)  Accordingly, the determination in this case may be based solely on consideration of the offense and the offender.  (See, e.g. *People v. Ayon* (1996) 46 Cal.App.4th 385, 399, disapproved on other grounds in *People v. Deloza* (1998) 18 Cal.4th 585, 600, fn. 10; *People v. Meeks* (2004) 123 Cal.App.4th 695, 707 (only necessary to consider secondary criteria in rare case that comparison leads to inference of gross disproportionality].)  In any event, defendant has not shown his sentence is disproportionate to other recidivist offenders with similar criminal records.  (See *People v. Goodwin* (1997) 59

1    Cal.App.4th 1084, 1094.)

2        In conclusion, defendant waived his claim that the sentence imposed was
     cruel and/or unusual in violation of the state and federal constitutions.  His appeal
3    therefore fails due to this failure to preserve the issue on appeal.  But even if he
     had preserved the claim, he would not prevail for the reasons explained herein
4    above.

5    (Lodged Doc. No. 4, Opinion, at 15-19.)

6        A criminal sentence that is not proportionate to the crime for which a defendant is

7    convicted may indeed violate the Eighth Amendment.  In <u>Rummel v. Estelle</u>, 445 U.S. 263, 100

8    S.Ct. 1133 (1980), the Court upheld a life sentence imposed under a Texas recidivist statute for a

9    defendant convicted of obtaining $120.75 by false pretenses, an offense normally punishable by

10   imprisonment for two to ten years.  <u>Rummel v. Estelle</u>, 445 U.S. 263, 266, 100 S.Ct. 1133, 1135

11   (1980).  However, because he had two prior felony convictions (for fraudulent use of a credit

12   card and passing a forged check), and had served two prior prison terms, the prosecution chose to

13   proceed under the state's recidivist statute, which carried a life sentence.  <u>Id</u>. The Supreme Court

14   held that Rummel's sentence of life imprisonment *with* the possibility of parole did not violate

15   the Eighth Amendment.  <u>Id</u>. at 365-266, 100 S.Ct. at 1135. (emphasis added).  The Court noted

16   that Rummel had suffered two separate convictions and terms of imprisonment for each prior,

17   that he would be eligible for parole in twelve years, and that under the Texas recidivist statute,

18   prosecutors retained the discretion not to invoke the statute for "petty" offenders.  445 U.S. at

19   278-81, 100 S.Ct. at 1141.

20       Three years later, the U.S. Supreme Court set forth the criteria for finding a sentence to be

21   cruel and unusual punishment under the federal Constitution and affirmed a decision of the

22   Eighth Circuit holding unconstitutional a sentence of life imprisonment without the possibility of

23   parole for a seven-time nonviolent felony recidivist.  <u>Solem v. Helm</u>, 463 U.S. 277, 103 S.Ct.

24   3001 (1983).  Applying the proportionality criteria, the Court concluded that Solem's sentence

25   was grossly disproportionate to his crime of uttering a "no account" check for $100.00, even in

26   light of his prior six nonviolent felony convictions: three for third degree burglary, one for

27   obtaining money under false pretenses, one for grand larceny, and one for driving while

28   intoxicated.  <u>Id</u>. at 279-81, 103 S.Ct. at 3004-5.  The Court emphasized that Solem's life sentence

was far more severe than the sentence it had considered in <u>Rummel</u>, because Rummel was likely to be eligible for parole in twelve years, while Solem was given no possibility of parole at all. <u>Id</u>.

In <u>Harmelin v. Michigan</u>, 501 U.S. 957, 111 S.Ct. 2680 (1991), the defendant received a mandatory sentence of life in prison *without* the possibility of parole for possession of more than 650 grams of cocaine, his first felony offense.   <u>Harmelin v. Michigan</u>, 501 U.S. 957, 111 S.Ct. 2680 (1991) (emphasis added).   The U.S. Supreme Court upheld the sentence, with five justices agreeing, for varying reasons, that the sentence did not violate the Eighth Amendment.   Although the Court did not produce a majority opinion, seven justices favored some manner of proportionality review.   Justice Kennedy, joined by Justices O'Connor and Souter, stated that a noncapital sentence could violate the Eighth Amendment if it was "grossly disproportionate" to the crime, but concluded that courts need not examine the second and third factors of intrajurisdictional and interjurisdictional reviews discussed in <u>Solem</u>, unless "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."  <u>Id</u>. at 1005.   The Ninth Circuit, adopting Justice Kennedy's concurring opinion in <u>Harmelin</u>, now refers to the test articulated as "the rule of <u>Harmelin</u>."   <u>Andrade v. Attorney General of the State of California</u>, 270 F.3d 743, 756 (9th Cir. 2001).

The majority of the justices in the <u>Harmelin</u> court agreed that outside capital punishment, deeming a sentence cruel and unusual punishment is "exceedingly rare" due to the lack of objective guidelines for terms of imprisonment.   <u>Harmelin</u>, 501 U.S. 957, 964, 111 S.Ct. 2680 (1991).   The threshold for such an inference of disproportionality is high.   <u>Id</u>. at 1001, 111 S.Ct. at 2707 (Kennedy, J. concurring).   Generally, so long as the sentence imposed by the state court does not exceed statutory maximums, the sentence will not be considered cruel and unusual punishment under the Eighth Amendment.   <u>United States v. McDougherty</u>, 920 F.2d 569, 576 (9th Cir. 1990).

The <u>Harmelin</u> Court concluded that the defendant's sentence did not meet the threshold factor of "gross disproportionality."   Justice Kennedy stressed the serious nature of Harmelin's offense, stating that the offense "threatened to cause grave harm to society" unlike "the relatively minor, nonviolent crime at issue in <u>Solem</u>."   <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1002, 111

S.Ct. 2680, 2705 (1991).  Justice Kennedy further noted that the "possession, use, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population.'" and that the quantity of cocaine possessed by Harmelin had a potential yield of between 32,500, and 65,000 doses.  Id.

In <u>Lockyer v.  Andrade</u>, 538 U.S. 63 (2003), the Supreme Court discussed the current state of Eighth Amendment proportionality review and held that the only clearly established governing legal principle is that a "gross disproportionality" review applies to criminal sentences for a term of years.  <u>Id</u>. at 72.  Citing extensively to its past cases dealing with criminal sentencing and proportionality under the Eighth Amendment, the Court acknowledged that it has "not established a clear and consistent path for courts to follow."  <u>Id</u>.  The Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' frame work is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."  <u>Id</u>.

In <u>Ewing v.  California</u>, 123 S. Ct.1179 (2003), the Supreme Court again reviewed the Supreme Court's Eighth Amendment jurisprudence, and chose to adopt Justice Kennedy's view [1] that:

> [There are] four principles of proportionality review-- the primacy of the legislature; the variety of legitimate penological schemes; the nature of our federal system; and, the requirement that proportionality be guided by objective factors– that inform the final one: The Eighth Amendment does not require strict proportionality between the crime and the sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.

<u>Ewing</u>, at 1186-1187.

Here, the California Court of Appeal reasonably rejected Petitioner's claim.  While the triggering offense of possession of heroin may not be as serious as Petitioner's prior strike offenses, under California law, any felony can constitute the third strike and result in a term of 25 years to life.  <u>Lockyer v. Andrade</u>, 538 U.S. at 67; <u>see</u> <u>also</u> <u>People v. Cooper</u>, 43 Cal.App.4th 815, 829 (1996) (there is no requirement that the current offense be a serious or violent felony

---

[1]As expressed in his concurring opinion in <u>Harmelin v.  Michigan</u>, 501 U.S. 957, 1001 (1991), *citing* <u>Solem v.  Helm</u>, 463 U.S. 277, 288 (1983).

because a third strike term is not based solely on the current offense but also on the prior criminal history.)  Petitioner's criminal history dates back to 1963 and includes violent sexual assaults against different victims[2], repeated thefts, driving under the influence, numerous parole and probation violations, and several prior terms of imprisonment.  Indeed, as noted by the Court of Appeal, Petitioner's "criminal conduct as an adult began in 1966 and continued unabated, except in periods of incarceration, to the time of his present conviction, and includes at least 28 separate incidents of criminal behavior." (Lodged Doc. No. 4, Opinion, at 18; see also CT 189-191.) Petitioner's criminal behavior makes him the precise candidate for which California's Three Strikes sentencing law was implemented.  Viewed in this context, Petitioner's case is simply not a "rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Harmelin, 501 U.S. at 1005.  The appellate court properly considered the current offense of possession of heroin as well as his prior strike offenses and reasonably concluded that his sentence was not unconstitutionally disproportionate. In addition, Petitioner's sentence is less severe than that imposed in Solem because he is eligible for parole.  (CT 197-198.)  Petitioner's sentence is also less severe than the sentence upheld in Harmelin-life without the possibility of parole for a first-time offense of possession of a large amount of cocaine.  Harmelin, 501 U.S. at 996.  The appellate court's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, nor an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. §§ 2254(d)(1), (2).

E.       Ineffective Assistance of Appellate Counsel

        Petitioner acknowledges that he did not raise this claim in his direct appeal in state court "because it was not clear from the record that there was no tactical reason for counsel's failure to adequately raise and preserve the 8th Amendment claim."  Petition, at 10.  Petitioner raised the claim in his petition for writ of habeas corpus to the California Supreme Court which was denied

---

[2] More specifically, the "three prior convictions occurred in 1968, consisting of instances of oral copulation by force (§ 288, subd. (b)) and sodomy by force (former § 286.1) perpetrated while [Petitioner] was in the Fresno County Jail, the sordid details of which are recounted in *People v. Jones* (1970) 10 Cal.App.3d 237, 241-242." (Lodged Doc. No. 4, Opinion, at 11-12.)

1    without comment on March 25, 2009.

2         Petitioner contends that appellate counsel was incompetent for failing to challenge trial

3    counsel's failure to object to Petitioner's sentence as cruel and unusual under the Eighth

4    Amendment.

5         Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the

6    Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective

7    assistance of appellate counsel are reviewed according to Strickland's two-pronged test. Miller

8    v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th

9    Cir.1986); see also Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 353-54 (1988) (holding that

10   where a defendant has been actually or constructively denied the assistance of appellate counsel

11   altogether, the Strickland standard does not apply and prejudice is presumed; the implication is

12   that Strickland does apply where counsel is present but ineffective).

13        To prevail, Petitioner must show two things. First, he must establish that appellate

14   counsel's deficient performance fell below an objective standard of reasonableness under

15   prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052,

16   2064 (1984). Second, Petitioner must establish that he suffered prejudice in that there was a

17   reasonable probability that, but for counsel's unprofessional errors, she would have prevailed on

18   appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence

19   in the outcome. Id. The relevant inquiry is not what counsel could have done; rather, it is whether

20   the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th

21   Cir.1998). The presumption of reasonableness is even stronger for appellate counsel because he

22   has wider discretion than trial counsel in weeding out weaker issues; doing so is widely

23   recognized as one of the hallmarks of effective appellate assistance. Miller v. Keeney, 882 F.2d

24   1428, 1434 (9th Cir.1989). Appealing every arguable issue would do disservice to the Petitioner

25   because it would draw an appellate judge's attention away from stronger issues and reduce

26   appellate counsel's credibility before the appellate court. Id. Appellate counsel has no

27   constitutional duty to raise every nonfrivolous issue requested by petitioner. Id at 1434 n10

28   (citing Jones v. Barnes, 463 U.S. 745, 751-54, 103 S.Ct. 3308 (1983)).

Petitioner's claim is without merit.  As discussed above, there is no merit to Petitioner's claim that his sentence of 25 years to life was cruel and unusual punishment, and it logically follows that appellate counsel was not ineffective for failing to raise a meritless argument. Petitioner has failed to demonstrate deficient performance or prejudice under <u>Strickland</u>. Moreover, even had trial counsel raised the claim at sentencing, for the reasons explained by the Court of Appeal, such argument would have been rejected.  Accordingly, Petitioner's claim that appellate counsel was ineffective fails on the merits.

ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1.      The instant petition for writ of habeas corpus is DENIED;

2.      The Clerk of Court is directed to enter judgment in favor of Respondent; and,

3.      The court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," i.e., when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong"; <u>Hoffman v. Arave</u>, 455 F.3d 926, 943 (9th Cir. 2006) (same).  In the present case, the Court finds that reasonable jurists would not find it debatable that the state courts' decision denying Petitioner's petition for writ of habeas corpus were not "objectively unreasonable."

 IT IS SO ORDERED.

**Dated:   October 13, 2009**            _____/s/ **Dennis L. Beck**_____
                                              UNITED STATES MAGISTRATE JUDGE